**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARTURO AGUILAR, individually and on behalf of all other similarly situated,<br><br>  Plaintiffs,<br><br>  v.<br><br>MELKONIAN ENTERPRISES, INC., and MARK MELKONIAN,<br><br>  Defendants. | 1:05-CV-00032 OWW LJO<br><br>MEMORANDUM DECISION AND ORDER RE: MOTION FOR CONDITIONAL CERTIFICATION AND MANDATORY CLASS AND PRELIMINARY APPROVAL OF SETTLEMENT STIPULATION AND APPROVAL OF NOTICE TO CLASS MEMBERS |

## I.  INTRODUCTION

Plaintiff Arturo Aguilar brought this ERISA case as a putative class action to represent participants and beneficiaries of the Melkonian Enterprises Inc. Employees' Pension Plan ("Money Purchase Plan") and the Melkonian Enterprises Inc. Employees' Profit Sharing Plans ("Profit Sharing Plan")(collectively "the Plans") against Melkonian Enterprises and Mark Melkonian.  The complaint alleges that the Plans suffered substantial losses due to Defendants' breach of fiduciary duty.

The parties have entered into a Joint Stipulation of Settlement.  Under the terms of the Settlement, the parties seek preliminary approval of the settlement under Rule 23(e) and move for conditional certification of a mandatory class for settlement

1

purposes under Rule 23(b)(1) and/or 23(b)(2). Specifically, Plaintiffs request that the court: (1) set a final approval hearing; (2) approve the form of the Notice of Class Action Settlement; (3) authorize mailing of the Notice; (4) set dates for submission of any objections; (5) certify the proposed class; (6) certify the named Plaintiff as the Class representative and his counsel as Class Counsel; and (7) preliminarily approve the settlement for submission to the Class.

## II.   **FACTUAL BACKGROUND & PROCEDURAL HISTORY**

Melkonian is a family owned company in Sanger that grows, processes, dehydrates, and sells dried fruits. Mark Melkonian became president in 1997. Mark Melkonian and Melkonian Enterprises were the designated fiduciaries of the plan for all relevant time periods. The named Plaintiff, a former Melkonian employee for over 38 years, was a participant in the Plans.

It is alleged that Defendants' failure to prudently invest the assets of the Plans caused the Money Purchase Plan to lose over $1.4 million in assets (40%) of its value, and the Profit Sharing Plan to lose over $1 million in assets (48%) of its value. As an example, this caused Mr. Aguilar's Money Purchase Plan account to lose almost $60,000 and his Profit Sharing Plan to lose almost $57,000. Specifically, it is alleged that the losses were due to (1) Defendants' failure to monitor the activities of the Plans' investment advisor, (2) investment of the assets in risky high-technology and internet mutual funds, and (3) engaging in risky margin trading.

In addition, Defendants terminated the Money Purchase Plan

**2**

on July 1, 2001.  It is alleged that Defendants failed to give participants adequate written notice of the termination.

Defendants deny the allegations.

It is undisputed that approximately 90% of the assets invested in the Plans belonged to members of the Melkonian family.  As explained below, those individuals are to be excluded from the Class.  The remaining approximately 10% of the assets belonged to the approximately 50 other participants/ beneficiaries in the Plans, those who make up the proposed Class.

The lawsuit was filed January 6, 2005, alleging (1) breach of fiduciary duty with respect to both Plans and (2) failure to provide adequate notice of termination of the Money Purchase Plan.

Defendants tendered the defense of this action to its insurer, Fireman's Fund.  In February 2005, Fireman's Fund denied the tender.  (Doc. 37, Ex. B, Defendant's Suppl. Brief, at 1.) Defendants spent eight months seeking retraction of the tender denial.  In October 2005, Fireman's Fund partially retracted its denial and agreed to accept the tender of defense only as to Melkonian Enterprises Inc., under reservation of rights, and only as to the Second Claim for Relief (failure to provide adequate notice of termination).  (*Id*. at 2.)

After a settlement conference before the magistrate judge, the parties agreed that settlement would be in their mutual best interest.  In addition to the settlement between the parties to this action described in detail below, Fireman's Fund agreed to contribute $95,000 toward the settlement of this action.  (*Id*.)

A.      **Summary of the Settlement**.

**Class definition**: All participants in and beneficiaries of both Plans from January 9, 1999 through the date of the preliminary approval hearing order in this action, excluding Dennis Melkonian, Douglas Melkonian, Mark Melkonian, Susan Melkonian (also known as Marla Sloan), Victoria Melkonian, and Violet Melkonian.

The January 9, 1999 cut off date represents the point beyond which the applicable six year statute of limitations would bar any actions on behalf of participants and beneficiaries holding assets prior to that date.

**Relief Provided by the Settlement**: Defendants will pay Plaintiffs $295,000.  (The money has already been placed in an interest bearing escrow account.)  $189,000 of the $295,000 will be allocated to the breach of fiduciary duty claim; $21,000 will be allocated to the failure to notify claim; $75,000 will go do Plaintiffs' counsel; and $10,000 will go directly to the named Plaintiff in the form of a class representative payment to compensate him for his service to the Class.

Plaintiffs believe the settlement will provide certainty to all parties and will avoid further delay and litigation expenses.

### III.   DISCUSSION

A.   **Request for Certification of a Mandatory (non-opt-out) Class for Settlement**.

Plaintiffs request certification of the Class under Rule 23(a) as defined (see above).  Specifically, Plaintiffs request certification as a mandatory class under either Rule 23(b)(1) or

**4**

(b)(2).

### 1. **Rule 23(a) Requirements**.

Certification of a class of plaintiffs is governed by Federal Rule of Civil Procedure 23(a), which states in pertinent part that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all." As a threshold matter, in order to certify a class, a court must be satisfied that

> (1) the class is so numerous that joinder of all members is impracticable (the "numerosity" requirement); (2) there are questions of law or fact common to the class (the "commonality" requirement); (3) the claims or defenses of representative parties are typical of the claims or defenses of the class (the "typicality" requirement); and (4) the representative parties will fairly and adequately protect the interests of the class (the "adequacy of representation" requirement).

*In re Intel Secs. Litig.*, 89 F.R.D. 104 at 112 (N.D. Cal. 1981)(citing Fed. R. Civ. P. 23(a)).

#### a. **Numerosity**.

There are approximately 50 former and current participants in the Plans. Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members. *Ansari v. New York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998). Numerosity is also satisfied where joining all Class members would serve only to impose financial burdens and clog the court's docket. *In re Intel Secs. Litig.* 89 F.R.D. at 112. Here, the joinder of approximately 50 individual participant/beneficiaries with essentially identical claims to that of the proposed class representative would only further clog this court's already overburdened docket.

///

     **b.**  **Commmon Questions of Fact and Law**.

Commonality exists when there is either a common legal issue stemming from divergent factual predicates or a common nucleus of facts resulting in divergent legal theories. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Here, the potential Class members' claims are essentially identical to one another and to that of Mr. Aguilar. All allege that Defendants breached their fiduciary duties by imprudently investing the assets of the plan.

     **c.**  **Typicality**.

Typicality is satisfied if the representative's claims arise from the same course of conduct as the class claims and are based on the same legal theory. *See e.g., Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995). Here, the named Plaintiff's claims are typical of the class claims because all focus on the alleged imprudent investment practices and on the failure to provide adequate notice of the Plan merger.

     **d.**  **Fair & Adequate Representation**.

The final Rule 23(a) requirement is that the class representative fairly and adequately protect the interests of the class. This requirement has two parts. First, the representative's attorney must be "qualified, experienced, and able to conduct the litigation." *In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Secs. Litig.*, 122 F.R.D. 251, 257 (C.D. Cal. 1998). Second, the suit must not be "collusive" and the named Plaintiff's interests must not be "antagonistic to the class." *Id*.

All requirements are satisfied here. Plaintiffs' counsel,

Daniel Feinberg, is experienced in the field of ERISA class action litigation. He has been practicing in the field of employee benefits law for more than 15 years. (Feinberg Decl., Doc. 33, at ¶3.) He is an accomplished writer and instructor on the subject of employee benefits law, and has served as a mediator and a Special Master in ERISA-related matters. (*Id*. at ¶¶ 3-4.)

In addition, Mr. Aguilar's interests are completely aligned with those of the class. His interest is in maximizing their recovery. Although Mr. Aguilar is receiving an additional $10,000, this appears to be reasonable to compensate him for the time and expense he devoted to pursuing this case.

### 2. **Certification as a Mandatory Class under Rule 23(b)(1) or (b)(2)**.

Once the threshold requirements of Rule 23(a) are satisfied, a class may be certified only if the class action satisfies the requirements of Rule 23(b)(1), (b)(2), and/or (b)(3). Here, the parties seek certification of a mandatory class under either Rule 23(b)(1) and/or (b)(2).

### a. **Rule 23(b)(1)**.

Under Rule 23(b)(1) a class may be maintained if "the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of the other members not

**7**

parties to the adjudications or substantially impair or impede their ability to protect their interests."

Here, either prong can be satisfied. Defendants' allegedly unlawful conduct applied to the Plans as a whole. If individual members pursued litigation independently, there would be a risk of inconsistent results. In addition, a determination in one case that Defendants breached their fiduciary duty to the Plan beneficiaries would be dispositive of other cases. Moreover, under ERISA, although plan participants and beneficiaries have a statutory right to bring actions for breach of fiduciary duty, any recovery belongs to the plan as a whole. *Mass. Mutual Life Ins. Co. v. Russell*, 472 U.S. 134, 140 (1985). Here, although each plan participant will have a different proportional interest in the outcome, based on each individual's history and account balance, the alleged unlawful activity still affects the class as a whole. *See In re Syncor Erisa Litigation*, 227 F.R.D. 338, 346 (C.D. Cal. 2005)("A classic example of a Rule 23(b)(1)(B) action is one which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of beneficiaries, requiring an accounting or similar procedure to restore the subject of the trust.").

It is appropriate to certify ERISA actions such as this one as mandatory (non-opt-out) classes because the risk of inconsistent decisions is considerable. *See Rankin v. Rots*, 220 F.R.D. 511, 522-23 (E.D. Mich. 2004); *In re IKON Office Solutions Inc. Sec. Litig.*, 209 F.R.D. 94, 102 (E.D. Pa. 2002).

### b. **Rule 23 (b)(2)**.

Alternatively, Plaintiffs seek certification under Rule

**8**

23(b)(2) which permits the maintenance of a class action (assuming Rule 23(a) is also satisfied) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

Here, Plaintiffs seek a declaration that Defendants violated ERISA, an injunction enjoining Defendants' acts or practices that violate ERISA, and an injunction requiring the removal of Mark Melkonian as plan fiduciary and imposing an independent fiduciary.  Rule 23(b)(2) is properly used as a vehicle in similar ERISA actions.  *See Becher v. Long Island Lighting Co.*, 164 F.R.D. 144, 153-54 (E.D.N.Y. 1996)(certifying class under 23(b)(2) where plaintiffs sought injunctive relief "compelling the defendants to credit the class member for years of service prior to their withdrawals of employee contributions and to award all such credits in the future"); *see also Stoetzner v. U.S. Steel. Corp.*, 897 F.2d 115, 119 (3d Cir. 1990) (certification under 23(b)(2) appropriate where plaintiffs sought entitlement to benefits and alleged defendants breached their fiduciary duty by denying benefits); *Bower v. Bunker Hill Co.*, 114 F.R.D. 587, 596 (E.D. Wash. 1986) (certifying under 23(b)(2) class of plaintiffs seeking declaration that vested benefits were improperly terminated).

The class can be preliminarily certified under both Rule 23(b)(1) and/or (b)(2).

///

///

**B.    Proposed Class Notice & Administration**.

    **1.    The Notice is Appropriate**.

The proposed notice provides the definition of the class, describes the nature of the action and the proposed settlement (including the attorney's fees and class representative fee), explains the procedure for submitting claims, explains the timing of the final approval hearing, and explains that they may object to the settlement.

The notice will be translated into Spanish and submitted in both English and Spanish to all potential class members.

    **2.    The Notice Plan is Appropriate**.

The parties plan to mail the notice to the last known address of class members as identified through Defendants' records by November 3, 2006.  Should any mail be returned, follow-up mailing will be completed no later than November 20, 2006.  Objections will be due in writing, served upon the Court, Class Counsel, and Defendants' Counsel on or before December 11, 2006, and the Final Settlement Hearing will be held January 15, 2007.

Both the Proposed Notice and the Notice Plan are reasonable and will provide potential class members with appropriate notice and opportunity to object.

**C.    Preliminary Approval of the Settlement**.

In reviewing the settlement, although it is not a court's province to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, a court should weigh the strength of the plaintiff's case, the risk, expense, complexity, and likely duration of further

**10**

litigation, the stage of the proceedings, and the value of the settlement offer. *Chemical Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992). The court should also watch for collusion between class counsel and defendants. *Id*.

According to the complaint, the Plans lost approximately $2.4 million as a result of Defendants' allegedly wrongful conduct. The settlement provides that $210,000 will be distributed among Class Members. Although, at first glance, the overall recovery is modest, it is undisputed that approximately 90% of the assets invested in the Plans were owned by members of the Melkonian family, who are excluded from the Class. Accordingly, assuming the $2.4 million loss figure is correct, only a proportional loss of approximately $240,000 is attributable to the assets held by the Class. In this light, the $210,000 settlement represents a recovery of approximately 87.5 cents to the dollar. This is a sizeable recovery.

Plaintiffs assert that the settlement is fair because "it is not clear by any means that Plaintiff would prevail at trial and be awarded a greater sum of money than the Stipulation awards to the class." (Doc. 32 at 15.) A review of the nature of the claims and of Defendants' potential defenses supports such a conclusion.

**1.  Breach of Fiduciary Duty**.

Plaintiffs' first claim is that Defendants violated their fiduciary duty of prudence by, among other things, (1) failing to adequately monitor their Quick & Reilly broker's activities, (2) failing to adequately review the Plans' investments or investment strategy, and (3) investing the Plans' assets in risky high-

**11**

technology and internet mutual funds.  Plaintiff also alleges that Defendants violated their fiducuary duty of diversification under ERISA § 404(a)(1)(C), causing substantial loss to the Plans, by investing almost exclusively in equities.  Finally, Plaintiffs assert that the Plans' investments were disproportionately concentrated in high risk technology and large capitalization growth mutual funds.

Defendants dispute all of these allegations, emphasizing that the prudence of a fiduciary is measured by the "prudent person" standard, which judges the fiduciary's actions objectively, based on how a person, experienced or familiar with the matter at hand, would act.  *See Katsaros v. Cody*, 744 F.2d 270, 279 (2d Cir. 1984).  The prudent person standard normally focuses on the process the fiduciary undertakes to make investment decisions, judged at the "time of the decision" rather than in hindsight.  *Id*.

Here, Defendants assert that Mark Melkonian "reasonably enlisted, consulted and relied upon investment advice from Quick & Reilly."  (Doc. 37, Ex. B at 4.)  In addition, Defendants believe that expert testimony would show that many pension fiduciaries were investing regularly and significantly in technology stocks during 1999 and 2000 and that "it would have been imprudent not to so invest."  (*Id.*)  Specifically, Defendants assert that:

> While the balances in the plans decreased from their respective peaks, those decreases were not due to Defendants' imprudent investments.  The stock market plunged significantly in 2000 after many of these purchases were made.  Expert testimony will demonstrate that the decline was not reasonably forecast or anticipated by prudent investors.  Many plans lost

**12**

```
            money.  The decline in the plans' balances, in large
            part, was due to losses that would normally be expected
            due to the effects of the stock market during the
            relative time frame.
```

(*Id.*)

Defendants also dispute the amount of the alleged loss. Specifically, Defendants maintain that the Plans' assets increased greatly shortly before they lost value and that a significant reason for the increase was the nature of the allegedly imprudent investments.  (*Id.* at 4-5.)  In fact, Defendants assert that, overall, the assets grew by about $600,000 after Mark Melkonian took over as fiduciary.  (*Id.* at 5.)

The substantial relative value of the settlement, coupled with the strength of Defendant's arguments against liability, support a conclusion that the settlement is fair with respect to the first claim for relief.

### 2. **Failure to Provide Proper Notice of Plan Amendment**.

Plaintiffs' second claim is for failure to provide proper notice of the Pension Plan's termination and merger into the Profit Sharing Plan.  Plaintiffs allege that the merger violated ERISA § 204(h), 29 U.S.C. § 1054(h).  Again, Defendants deny the allegations.

In 1998, Retirement Plan Consultants, the third-party administrator for the Plans since 1996, recommended to Melkonian Enterprises that it should terminate the Pension Plan and merge it into the Profit Sharing Plan in order to provide additional flexibility to the company regarding contributions and to reduce

**13**

administrative costs. (Doc. 37, Ex. B at 6.) At a Board of Directors meeting held on May 30, 2001, the Directors of Melkonian Enterprises agreed to terminate the Pension Plan effective July 1, 2001 and to merge the assets into the Profit Sharing Plan. Also on May 30, 2001, Melkonian Enterprises executed a 15-day Notice of Intent to Terminate the Pension Plan effective July 1, 2001. (*Id.* at 6-7.) According to Defendants, it was the general practice of Melkonian Enterprises to distribute such notices to employees with their paychecks. The notice was distributed to non-employees by mail. The next paydate after the May 30, 2001 meeting was June 1, 2001, followed by pay dates June 8, 2001 and June 15, 2001. All employees signed for their paychecks on these dates. (*Id.* at 7.)

Defendant maintains that 15 days of notice was all that was required under ERISA. ERISA was amended by the Economic Growth and Tax Relief and Reconciliation Act of 2001 ("EGTRRA"). The amendments applied to plan amendments taking effect on or after June 7, 2001, but implementing regulations were not promulgated until 2003. Accordingly, those plans with amendments taking effect between June 7, 2001 and the issuance of the regulations in 2003 are considered to be in compliance with EGTRRA if the plan administrator makes a "reasonable, good faith effort to comply with those requirements." 68 Fed. Reg. 17277, 17290 (Apr. 9, 2003).

Prior to EGTRRA, only 15 days notice was required prior to the effective date of a plan amendment. Subsequent to EGTRRA, the general period of advanced notice was changed to 45 days. However, the 15 day period still applied to "small plans." *Id.*

**14**

1  at 17282.  A small plan is defined as a plan that the plan
2  administrator reasonably expects to have fewer than 100
3  participants who have accrued benefits under the plan.  *Id*. at
4  17283.  According to this definition, Defendants assert that the
5  Melkonian Plans would have qualified as small plans and that the
6  15 day notice was reasonable.

7  Finally, Defendants point out that EGTRRA only provides a
8  remedy for notice violations where the violation is egregious,
9  such as where a failure is either intentional or constitutes a
10 failure to provide most of the individuals with most of the
11 information they are entitled to receive.  *See id.* at 17288-89;
12 *see also* Doc. 37, Ex. B. at 9.  Defendants maintain that there is
13 no evidence of an egregious violation.

14 Again, although only $21,000 of the $210,000 settlement is
15 allocated to the second claim for relief, this figure is fair
16 given the arguments Defendant could raise in opposition to
17 liability.

### 3. **Collusion**.

19 Finally, there is no evidence of collusion here.  The fee
20 awarded Plaintiffs counsel, $75,000, is modest.

21 The settlement is preliminarily approved as fair and
22 reasonable.

### IV. **CONCLUSION**

24 For the reasons set forth above:
25 (1)  The Class, as proposed, is preliminarily certified
26       under both Federal Rule of Civil Procedure 23(b)(1)
27       and/or 23(b)(2);
28 (2)  Arturo Aguilar is appointed and designated as the

**15**

|   |     |                                                        |
|---|-----|--------------------------------------------------------|
| 1 |     | Representative Plaintiff and the Class Representative. |
| 2 | (3) | Daniel Feinberg, Esq. and Vincent Cheng, Esq. are      |
| 3 |     | appointed and designated Class Counsel;                |
| 4 | (4) | The Class Notice is adequate, as is the Notice Plan;   |
| 5 |     | and                                                    |
| 6 | (5) | The Settlement is preliminarily approved as fair and   |
| 7 |     | reasonable.                                            |

Additional details regarding the deadlines for class administration, objections, and the final settlement hearing are addressed in a separate order.

IT IS SO ORDERED.

**Dated:   November 3, 2006**          /s/ Oliver W. Wanger
b2e55c                                 UNITED STATES DISTRICT JUDGE

**16**